**UNITED STATES of America, Appellee**

v.

**Kenneth BENBOW, Appellant**

No. 12-3052
Consolidated with 12-3053
12-3054
September Term, 2017

United States Court of Appeals, District of Columbia Circuit.

Filed on: January 12, 2018

Daniel Joseph Lenerz, Attorney, Elizabeth Trosman, Esquire, Assistant U.S. Attorney, Elizabeth Harper Danello, Assistant U.S. Attorney, Anthony Scarpelli, Assistant U.S. Attorney, USAO Appellate Counsel, U.S. Attorney's Office, (USA) Appellate Division, Washington, DC, for Plaintiff-Appellee

Matthew Gardner Kaiser, Amelia Schmidt, Kaiser Dillon PLLC, Washington, DC, for Defendant-Appellant

Randal John Meyer, Counsel, Office of Senator Rand Paul, Washington, DC, Ilya Shapiro, Esquire, The Cato Institute, Washington, DC, for Amicus Curiae for Appellant Cato Institute

Before: Tatel, Kavanaugh, and Srinivasan, Circuit Judges.

## JUDGMENT

This case was considered on the record from the United States District Court for the District of Columbia, and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the judgments of the United States District Court for the District of Columbia dated June 21, 2012, for defendant Alonzo Marlow and June 22, 2012, for defendants Kenneth Benbow and Mark Pray be **AFFIRMED IN PART** and **VACATED IN PART.**

Defendants Kenneth Benbow, Mark Pray, and Alonzo Marlow were convicted and sentenced to life imprisonment for their roles in several violent murders and for their participation in an interstate drug conspiracy that involved the sale of crack cocaine, marijuana, and PCP in the Washington, D.C., metropolitan area. On appeal, the defendants raise a variety of arguments. As we will explain, all of their arguments except for one are unavailing.

*First,* the District Court did not abuse its discretion when it denied the defendants access to wiretap progress reports. The District Court concluded that the wiretap progress reports were not material within the meaning of Federal Rule of Criminal Procedure 16(a)(1)(E). The progress reports had no practical value in this case. Before trial, the Government provided the defendants other, more comprehensive wiretap-related materials that they needed to challenge the wiretaps.

*Second,* the District Court correctly concluded that Pray could not object to the September 1, 2006, search of Crystal Washington's home. Pray did not live in Washington's home. Although he may have frequented Washington's home at times, there is no evidence that Pray used the home for any reason other than to process, stash, and sell narcotics. Under settled law, an individual's drug-related activity in someone else's home does not give that individual the right to object to a police search of the other person's home. *See Minnesota v. Carter,* 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *United States v. Hicks,* 978 F.2d 722, 724 (D.C. Cir. 1992).

*Third,* even if the District Court erred in admitting Marlow's cell-site data, the error was harmless. In *Carpenter v. United States,* the Supreme Court is deciding whether the warrantless seizure and search of historical cell phone records that reveal the location and movements of a cell phone user is permitted by the Fourth Amendment. —— U.S. ——, 138 S.Ct. 293, 199 L.Ed.2d 13 (2017) (Mem). Even assuming that the warrantless search here was

unlawful, the admission of the cell-site evidence was harmless. That is because Marlow's cell-site data was largely duplicative of the GPS location evidence obtained from the logs monitoring Marlow's ankle bracelet. Both the cell-site data and the GPS logs place Marlow near both Washington and Hodge when they were murdered. Indeed, the GPS data was more precise and accurate than the cell-site data. Therefore, any error associated with the admission of the cell-site data was harmless.

*Fourth*, the District Court did not abuse its discretion by admitting Marlow's in-jail letter to Pray. The Government was required to demonstrate that the letter was authentic. *See United States v. Mejia*, 597 F.3d 1329, 1335-36 (D.C. Cir. 2010). Here, the District Court found that the handwriting on the letter matched the handwriting on forms that Marlow had signed; the message was directed to Pray and concerned the murders at issue; the letter was found in Pray's cell; and the letter was addressed to Pray and preserved by Pray. The District Court did not abuse its discretion in finding that the letter was authentic.

*Fifth*, the District Court did not abuse its discretion in refusing to allow opening statements on alternative theories of who murdered Washington and Hodge. Defendants have a constitutional right to present a complete defense, and this includes presenting reasonable third-party-perpetrator evidence. *See Holmes v. South Carolina*, 547 U.S. 319, 324-27, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). The District Court placed no limitations on the defense's ability to develop evidence at trial regarding their third-party perpetrator defense. The District Court also did not err in refusing to admit a closing statement that included an alternative theory that a man named Benton ordered Washington's murder. The defendants' cross-examination failed to yield sufficient evidence of a reasonable possibility that Benton ordered the murder of Washington.

*Sixth*, there was sufficient evidence to convict Marlow, Benbow, and Pray for committing a violent crime—murder—in aid of racketeering. "When reviewing a conviction for sufficiency of the evidence, the relevant question is whether ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gaskins*, 690 F.3d 569, 576-77 (D.C. Cir. 2012). Here, ample evidence showed that Benbow and Pray murdered Johnson because Johnson had spread lies about Benbow, and that Marlow murdered Hodge to avenge the murder of a member of Pray's organization.

*Seventh*, there was sufficient evidence for the jury to find that there was a single conspiracy. The evidence presented at trial, when viewed in the light most favorable to the Government, supported "a jury finding of a single conspiracy agreed to by all of the defendants." *United States v. Bostick*, 791 F.3d 127, 137 (D.C. Cir. 2015). The common purpose of the organization was to profit from selling drugs, including PCP, crack cocaine, and marijuana. Even if there were *also* separate smaller conspiracies, that does not mean there was not also one larger conspiracy.

*Eighth*, the District Court did not plainly err in concluding that second degree murder involves the use of force and hence qualifies as a crime of violence in light of the Supreme Court's decisions holding that indirect applications of force and reckless conduct may qualify as crimes of violence. *See United States v. Castleman*, —— U.S. ——, 134 S.Ct. 1405, 1414-15, 188 L.Ed.2d 426 (2014); *Voisine v. United States*, —— U.S. ——, 136 S.Ct. 2272, 2278-80, 195 L.Ed.2d 736 (2016).

*Ninth*, even assuming that the District Court abused its discretion by issuing

some of its jury instructions orally while providing others in writing, that error was harmless. Jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see also United States v. Toms*, 396 F.3d 427, 436 (D.C. Cir. 2005). The District Court clarified for the jury that, although some instructions were given on one day and some on another, they are "all just as important," and further encouraged the jurors to ask questions if they had any. J.A. 2389. That instruction cured any possible errors associated with the timing or form of the instructions.

*Tenth*, the defendants claim that FBI Special Agent Catherine Hanna testified as both an expert and a lay witness without clarifying the basis of her testimony. Therefore, the defendants argue, the District Court should not have admitted some of her testimony. Based on decisions of this Court handed down after the defendants' trial, the Government correctly concedes that Agent Hanna's testimony crossed the line at various points. *See, e.g., United States v. Hampton*, 718 F.3d 978, 982-83 (D.C. Cir. 2013); *United States v. Williams*, 827 F.3d 1134, 1156-58 (D.C. Cir. 2016). The Government also correctly concedes that Agent Hanna's testimony was not harmless as to counts 42-49 and 56-62 of the indictment. We further hold that Agent Hanna's testimony was not harmless as to counts 51, 53, 54, and 55. The convictions on those counts are all vacated.

The error was harmless as to the remaining convictions.

As to the convictions related to the arrests at Crystal Washington's home, the wiretaps took place after the arrests.

Therefore, Agent Hanna's testimony about the wiretaps was harmless.

As to the convictions related to Washington's murder, Johnson's murder, Robinson's attempted murder, and the use of Linda Battle's home for drug sales and trafficking: Those charges were overwhelmingly proved by cooperating witness testimony corroborated by physical evidence and, with regard to Battle's house, evidence from controlled buys.

As to Marlow's role in the Hodge murder, there was GPS monitoring data placing Marlow at the crime scene. The Government also put on several witnesses who testified to Marlow's presence at the crime scene, including Eric McLeod, who describes Marlow placing a gun in his waistband. Therefore, Agent Hanna's testimony was harmless as to that conviction.

With regard to Pray's role in the Hodge murder, Agent Hanna's testimony was harmless. The issue here focuses on a phone call between Pray and Marlow in which Marlow said, among other things, "work call." In the Government's closing argument, the prosecutor told the jury that the phone call shows the murder was reasonably foreseeable to Pray. In explaining why Pray would have known that "work call" meant murder, the prosecutor did not reference Agent Hanna's testimony. Rather, the prosecutor relied solely on Lawson White's independent (and later) testimony, saying: "And what's the first thing that Mr. Marlow says? Work call. I think Lawson White summed that up for us. He said Mr. Marlow is a work call, he kills." J.A. 2192. (Lawson had testified at J.A. 1605 as follows: A. Because I knew Zo [Marlow] was work call. Q. Work call, what does that mean? A. It mean if somebody do something, he going to kill somebody.").

Especially given the Government's exclusive focus on White's testimony in the closing argument, and given that White's

testimony used the exact same formulation ("work call") used by Marlow in the call, Agent Hanna's testimony was harmless as to Pray.

In sum, the convictions on the following counts are vacated: counts 42-49, 51, and 53-62. The remaining convictions are affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41(a)(1).