# United States Court of Appeals
## For the First Circuit

No. 20-1903

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIE RICHARD MINOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch, Thompson, Kayatta, Gelpí, and Montecalvo, Circuit Judges.

Karen A. Pickett for appellant.
Joshua K. Handell, Attorney, Criminal Division, U.S. Department of Justice, with whom Darcie N. McElwee, United States Attorney, Benjamin M. Block, Assistant United States Attorney, Kenneth A. Polite, Jr., Assistant Attorney General, and Lisa H. Miller, Deputy Assistant Attorney General, were on brief, for appellee.
Laura A. Foggan, Preetha Chakrabarti, and Crowell & Moring LLP on brief for amici curiae Battered Women's Justice Project, Illinois Coalition Against Domestic Violence, Indiana Coalition to End Domestic Violence, Kentucky Coalition Against Domestic Violence, Maine Coalition to End Domestic Violence, Maryland Network Against Domestic Violence, National Coalition Against Domestic Violence, and Standpoint.
Iman K. Kholdebarin, Alan E. Schoenfeld, Emily Barnet, Joe D.

Zabel, and <u>Wilmer Cutler Pickering Hale and Dorr LLP</u> on brief for amicus curiae Everytown for Gun Safety.

---

Opinion En Banc

---

March 24, 2023

---

**KAYATTA, Circuit Judge**. A jury convicted Willie Richard Minor under 18 U.S.C. § 924(a)(2) of knowingly violating 18 U.S.C. § 922(g), which prohibits nine categories of persons from possessing a firearm. On appeal, Minor asserts that the proceedings below were tainted by a series of errors relating to the mens rea required to establish a knowing violation of section 922(g).

In a divided opinion, a panel of this court vacated Minor's conviction on grounds of instructional error. United States v. Minor, 31 F.4th 9 (1st Cir. 2022), vacated, 49 F.4th 22. The panel focused its decision on Rehaif v. United States, 139 S. Ct. 2191 (2019), in which the Supreme Court held that convictions under section 924(a)(2) for knowingly violating section 922(g) require "the Government [to] prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200. The "relevant category" in this instance is the category of persons who have been convicted of a "misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). The government charged Minor with belonging to this category based on his 2010 no-contest plea to a simple assault charge under Maine law, which he entered after refusing to plead guilty to a charge of domestic violence assault. The panel vacated Minor's conviction because "the jury was allowed to convict [him] of knowingly

violating section 922(g)(9) without finding that he knew that his assault conviction placed him in the category of persons convicted of a misdemeanor crime of domestic violence." Minor, 31 F.4th at 11.

We granted the government's petition for rehearing en banc in order to reconsider the mens rea required for a conviction under sections 924(a)(2) and 922(g)(9), as well as whether the jury instructions here properly described the elements of that offense. United States v. Minor, 49 F.4th 22 (1st Cir. 2022). We once again vacate Minor's conviction and remand for a new trial due to instructional error, but we modify and clarify what type of knowledge equates to knowing -- for purposes of a conviction under sections 924(a)(2) and 922(g)(9) -- that he was in the category of persons convicted of a misdemeanor crime of domestic violence.

## I.

We first discuss the procedural path leading to Minor's trial and the largely undisputed facts presented to the jury. We then describe the parties' debate concerning how best to apply Rehaif's holding to adjudicating a charge that a person knowingly violated section 922(g)(9), which effectively sets the stage for the issues raised in this appeal.

**A.**

Minor's federal case began with a November 2016 interview with members of the Auburn, Maine Police Department,[1] in which Minor told the officers that he owned a Lorcin firearm, which the officers later seized.  In February 2017, a federal grand jury charged Minor under sections 924(a)(2) and 922(g)(9) with possession of a firearm by a person who had previously been convicted of a misdemeanor crime of domestic violence.  The predicate offense supporting this status was a June 2010 Maine conviction for Assault, Class D, committed against Minor's then-spouse.  Minor was convicted on the federal gun possession charge after a trial in December 2017.

While his appeal from that conviction was pending, the Supreme Court issued its decision in <u>Rehaif</u> construing sections 924(a)(2) and 922(g) to require the prosecution to show that the defendant knew he belonged to the relevant category of persons prohibited from possessing a gun (thus articulating what we have called the "scienter-of-status" requirement, <u>see</u> <u>United States</u> v. <u>Burghardt</u>, 939 F.3d 397, 400 (1st Cir. 2019)).  In light of that ruling, the parties agreed that Minor's conviction should be vacated and the case remanded for a new trial.  The government then filed a superseding indictment that included the allegation

---

[1]  The reason for this interview was not elicited at Minor's trial and does not appear to bear on the instant appeal.

that Minor "knew that he had been previously convicted of th[e] misdemeanor crime of domestic violence."

Minor's case proceeded to his second trial, at which he stipulated to most elements of the offense charged. He agreed that the gun was recovered from his home, was operable, and had been moved in interstate commerce; he further agreed that he had "knowingly possessed" it. Minor also stipulated to several details regarding his prior Maine assault conviction, including that the victim named in the 2009 assault complaint was his spouse at the time. As on appeal, his defense homed in on what he knew about his prior conviction, since he had "stipulated to literally every other aspect of the crime."

Also focusing on the mens rea issue, the government introduced some state-court records of Minor's prior offense. These records show that Minor was initially charged with a "Domestic Violence Assault" that occurred on August 23, 2009. The state-court complaint alleged that Minor "did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Betty Minor." It then stated, "This conduct was committed against a family or household member as defined by [Maine law]." The judicial advice-of-rights video played at Minor's state-court arraignment on the charge of Domestic Violence Assault instructed him:

> If you are convicted of certain specific crimes, you may lose your right to purchase, possess, or own a firearm or any type of ammunition. These specific crimes include offenses that involve the use of force, or even the attempt to use physical force, or offensive physical contact, or the use, or threat to use, a deadly weapon and . . . and the victim was either your spouse [or another specified relation]. The judge can tell you whether you are charged with such a crime. If you are, I would strongly suggest you speak with an attorney before entering a plea of guilty or no contest.

In the wake of that admonition, Minor refused to plead guilty to the domestic violence charge on which he was arraigned. Subsequently, the state prosecutor agreed to amend the complaint to reduce the charge to "Assault, Class D" and to strike the sentence stating, "This conduct was committed against a family or household member . . . ." The docket entries characterized the revision as a motion to amend "to delete DV reference." The revised charge thus eliminated any express allegation of domestic violence, claiming only that Minor "did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Betty Minor." The judgment and commitment form had initially been printed with the offense "Domestic Violence Assault," but the words "Domestic Violence" had been crossed out by hand. The state-court records show that Minor then pleaded no contest to the assault charge in June 2010. The record of this case contains no tape or transcript of the colloquy at the acceptance of Minor's plea.

In his own trial testimony in 2020 on the federal gun-possession charge, Minor described his understanding of his 2010 state-court conviction:  "I was convicted of a simple assault."  But, he said, "I wasn't convicted of a domestic. . . . They removed any language . . . that it was a domestic."  Minor then related that he had told his prior counsel, "I want to make sure I'm not pleading to a domestic," "because it would have meant that I couldn't have firearms."  Minor testified that he believed he could possess a firearm and that this result had been arranged in his plea, but the court struck that testimony on the government's objection, and it denied on relevance and unfair-prejudice grounds Minor's counsel's entreaty for further inquiry into Minor's belief that he could own a firearm.

Minor also sought to introduce testimony from George Hess, the lawyer who had represented him in the Maine state proceedings.  As proffered, Hess would purportedly have testified about Minor's desire "to possess a firearm" and that Minor was "unwilling to plead to a domestic violence offense."  Minor further proffered that Hess would testify to representations made to him by Assistant District Attorney Nicholas Worden, who prosecuted Minor's misdemeanor.  Specifically, ADA Worden allegedly told Hess "that Mr. Minor would still be able to possess a firearm if he pled guilty to the Class D simple assault."  The district court excluded this evidence on relevance grounds.

- 8 -

**B.**

Before trial, Minor sought jury instructions on the knowledge requirement imposed by Rehaif. He requested the jury be instructed that: "In order to find the Defendant guilty of the charged offense you must find beyond a reasonable doubt that he acted knowingly in possessing the firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Later, Minor revised the latter portion of the request so that he sought instructions requiring the jury to find, for a guilty verdict, "that at the time [Minor] possessed the firearm, he knew that he had been previously convicted of a misdemeanor crime of domestic violence" and "that he knew that he belonged to the status of individuals convicted of a crime of domestic violence as defined by federal law." Minor later supplemented the "as defined by federal law" portion of that request by asking that the court read out the statutory definition of "misdemeanor crime of domestic violence," which states:

> [T]he term "misdemeanor crime of domestic violence" means an offense that --
>
>> (i) is a misdemeanor under Federal, State, or Tribal law; and
>>
>> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is

- 9 -

> cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).[2]

The district court denied all of Minor's requested versions of the Rehaif instruction and ultimately instructed the jury that to find Minor guilty, it must find:

> that Willie Richard Minor knew that he had been convicted of [the specified Maine assault Class D offense], that he knew the conviction subjected him to incarceration of up to 364 days, that he knew the conviction was for causing bodily injury or offensive physical contact to another person, and that he knew the victim of the crime was his spouse at the time.[3]

---

[2] All references and citations to section 921(a)(33)(A) in this opinion are to the provision as it existed at the time of Minor's charged conduct. The Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12005, 136 Stat. 1313, 1332 (2022), has since added "a person who has a current or recent former dating relationship with the victim" to the list of relevant domestic relations. Additionally, the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 1104, 136 Stat. 840, 921-22, added misdemeanors under local law to the definition.

[3] The complete instruction for the elements of the charged section 922(g)(9) offense explained that, to find Minor guilty, the jury must find:

> First, that Willie Richard Minor had been convicted as charged in the superseding indictment of assault Class D in the Maine Superior Court on June 14, 2010.

> Second, that the victim of that crime was Willie Richard Minor's spouse at the time.

- 10 -

At the government's request, in light of Minor's testimony, the district court also charged the jury that Minor's "belief that he could possess a firearm is not itself a defense." The jury returned a guilty verdict, and the district court subsequently sentenced Minor to time served with three years' supervised release. Minor timely appealed, and a divided panel of

Minor has stipulated that he and Betty[] Minor were married from June 8, 2008, until October 4, 2016, and that the victim listed in the complaint filed on October 14, 2009, Betty Minor, was his spouse at the time.

Third, that Willie Richard Minor knew that he had been convicted of that crime, that he knew the conviction subjected him to incarceration of up to 364 days, that he knew the conviction was for causing bodily injury or offensive physical contact to another person, and that he knew the victim of the crime was his spouse at the time.

Fourth, that on about November 27, 2016, Willie Richard Minor knowingly possessed the firearm described in the superseding indictment. Minor has stipulated that is so.

Fifth, that the firearm satisfied the federal definition of firearm and was connected with interstate commerce. Minor has stipulated that that is so.

The word knowingly means that the act was done voluntarily and intentionally, not because of mistake or accident. The Government does not have to prove that Willie Richard Minor knew that his conduct in possessing a firearm was illegal or that he knew that he was prohibited from possessing a firearm, and his belief that he could possess a firearm is not itself a defense.

- 11 -

this court vacated his conviction on grounds of instructional error. Minor, 31 F.4th at 21. The government then petitioned for rehearing en banc. In granting the government's petition, we requested supplemental briefing focusing on Rehaif's application to section 922(g)(9) and the jury instructions here.

## II.

Minor argues that the district court misapprehended Rehaif's requirement throughout the proceedings below, leading to his being convicted on improper jury instructions and insufficient evidence. We review this preserved contention of legal error de novo. See United States v. Norris, 21 F.4th 188, 193–95 (1st Cir. 2021) (applying de novo standard of review to preserved challenges to sufficiency of the evidence and jury instructions). To conduct this review, we first address the application of Rehaif to section 922(g)(9) and the jury instructions, and then discuss where that analysis leaves Minor's sufficiency challenge.

## A.

We confront the often daunting task of trying to apply Congress's use of categorical descriptions to define certain crimes, convictions for which serve as elements of separate federal crimes. See De Lima v. Sessions, 867 F.3d 260, 268 (1st Cir. 2017) ("Even a single such categorical analysis is an arduous task, requiring a close analysis of the specific statutory language put at issue [and] of the case law interpreting that language . . . .

- 12 -

The ensuing categorical evaluation is often difficult and time consuming." (citations omitted)). Our task here is doubly difficult because in this instance Congress has expressly required that proof of a gun possession crime under section 924(a)(2) turns, in part, on whether the defendant knows that a particular prior crime of conviction fits Congress's categorical description of that which is required to render the possession unlawful. See Rehaif, 139 S. Ct. at 2197.

Minor was convicted in Maine state court on a Class D assault charge in 2010. Section 922(g)(9) provides that if that crime was a "misdemeanor crime of domestic violence," he could not lawfully buy or possess a gun. Whether a simple assault offense like Maine's Class D offense satisfies Congress's categorical description of misdemeanor crimes of domestic violence split the federal courts for many years until a divided Supreme Court settled the question in Voisine v. United States, 579 U.S. 686 (2016), by finding that Maine's statute did so qualify. Id. at 689-90, 698-99.

In the wake of Voisine, both parties agree that Minor's possession of a firearm following his state conviction violated section 922(g)(9). The charge in this case, however, is brought under section 924(a)(2), which makes it a serious crime to "knowingly violate[]," among other things, section 922(g). 18

- 13 -

U.S.C. § 924(a)(2).[4] Minor, in turn, has contended from the outset of this criminal prosecution that he did not knowingly violate section 922(g)(9) because he did not know what he would have known had he read Voisine -- i.e., that Maine's Class D assault offense can be a misdemeanor crime of domestic violence. The government, in turn, argues that it need only prove that Minor knew those "features" of his prior conviction that qualify it as a misdemeanor crime of domestic violence, by which the government means "every aspect of his prior conviction necessary to render it a 'misdemeanor crime of domestic violence' under 18 U.S.C. § 921(a)(33)(A)," which defines the term "misdemeanor crime of domestic violence." That knowledge, asserts the government, "includes (1) that the defendant's prior offense was 'a misdemeanor under Federal[,] State[,] or Tribal law,' (2) that it 'ha[d], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon,' and (3) that it was committed against a person of domestic relation to the perpetrator."

---

[4] All references and citations to section 924(a)(2) in this opinion are to the provision as it existed at the time of Minor's charged conduct. The Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12004, 136 Stat. 1313, 1329 (2022), has since moved the penalty provision for section 922(g) from section 924(a)(2) to 924(a)(8), which provides for a longer maximum period of imprisonment.

- 14 -

The panel opinion in this case held that Minor's conviction need be set aside because "the jury was allowed to convict Minor of knowingly violating section 922(g)(9) without finding that he knew that his assault conviction placed him in the category of persons convicted of a misdemeanor crime of domestic violence." Minor, 31 F.4th at 11. In particular, the panel held that "the government here need prove that Minor knew that he had been convicted of a misdemeanor crime of domestic violence." Id. at 17. We now reaffirm those holdings. In so doing, however, we modify and clarify what it means to prove that Minor knew that he had been convicted of a misdemeanor crime of domestic violence. We hold that if Minor's knowledge about his prior conviction included everything necessary to satisfy the definition of "misdemeanor crime of domestic violence," see 18 U.S.C. § 921(a)(33)(A), then, for all purposes relevant here, he knew that he had been convicted of a misdemeanor crime of domestic violence. And that remains true even if he did not know that such an offense had been labeled in sections 922(g)(9) and 921(a)(33)(A) as a misdemeanor crime of domestic violence.

### 1.

Our reasoning begins with section 922(g). That section deems unlawful the possession of a firearm by any person who falls into any one or more of nine specified categories. For example,

it is unlawful for an alien who is "illegally or unlawfully in the United States" to possess a firearm. 18 U.S.C. § 922(g)(5)(A).

We then turn to section 924(a)(2), the section under which Minor was convicted. That section provides for criminal penalties, of up to ten years in prison, for "[w]hoever knowingly violates [section 922(g)]." 18 U.S.C. § 924(a)(2). Focusing on the word "knowingly," the Supreme Court held in Rehaif that an alien who is "unlawfully" in the United States cannot be convicted under section 924(a)(2) for possessing a gun unless the government proves "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2199-2200. More generally, the Court pronounced that "by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." Id. at 2196.

Of particular relevance to the Court was the fact that the conduct at issue -- possessing a firearm -- "can be entirely innocent." Id. at 2197. So it is the defendant's "status" as belonging to one of the categories listed in section 922(g) which serves as the "'crucial element' separating innocent from wrongful conduct." Id. (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 73 (1994)). Additionally, even though the Court

- 16 -

recognized that "whether an alien is 'illegally or unlawfully in the United States' is a question of law," it rejected the government's "appeal[] to the well-known maxim that 'ignorance of the law' (or a 'mistake of law') is no excuse." Id. at 2198. The Court explained that that "maxim does not normally apply where a defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense." Id. (quotation marks omitted); see also id. ("[A] mistake of law is a defense if the mistake negates the 'knowledge . . . required to establish a material element of the offense.'" (alteration in original) (quoting Model Penal Code § 2.04)). Accordingly, although "[t]he defendant's status as an alien 'illegally or unlawfully in the United States' refers to a legal matter," "[a] defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require." Id.

Crucially, for our purposes, Rehaif does not explain exactly what type of knowledge equates to knowing that one "belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200. The Court did offer some guidance. It observed that in a case involving an alleged knowing violation of section 922(g)(1) -- which prohibits firearm

- 17 -

possession after being convicted of "a crime punishable by imprisonment for a term exceeding one year"[5] -- a defendant who was convicted of a crime that was so punishable might nevertheless be innocent if, for example, he was "sentenced only to probation" and did not actually know that the crime was so punishable. Id. at 2198. In other words, knowing in such a case that one has been convicted of Crime X is not sufficient merely because Crime X is punishable by more than a year in prison; one must actually know that Crime X is punishable by more than a year in prison.

Here, "the relevant category of persons barred from possessing a firearm" is those "convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). Pointing to Rehaif's treatment of charges under sections 922(g)(1) (those convicted of a crime punishable by more than one year in prison) and 922(g)(5)(A) (aliens illegally or unlawfully present) as closely controlling analogies, Minor first argues that the government must prove that he knew that the assault crime of which he had been convicted was classified as a misdemeanor crime of

_____

[5] In 2021, 79% of all defendants sentenced under U.S.S.G. § 2K2.1 -- which covers offenses involving the unlawful possession of firearms, among other firearm-related crimes -- were convicted under section 922(g)(1), compared to 1.8% convicted under section 922(g)(9). See U.S. Sent'g Comm'n, What Do Federal Firearms Offenses Really Look Like? 24 (July 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220714_Firearms.pdf.

domestic violence, not just that he had been convicted of a crime that was, unbeknownst to him, so classified.

We disagree. To explain why, we point first to Rehaif's caution that its holding does not necessarily dictate how best to consider convictions under subsections of section 922(g) not at issue in Rehaif itself. 139 S. Ct. at 2200. We then consider a hypothetical example. Suppose Congress had included as a tenth category of section 922(g) something like, "any person . . . who has received a lengthy sentence for a crime of which he was convicted in any court." A large number of defendants could plausibly argue that they could not tell whether they belonged to that category. But if Congress added to the end of that hypothetical subsection something along the lines of "for purposes of this subsection, the term 'lengthy sentence' means any sentence in excess of one year," then, in order to have the mens rea required to establish a knowing violation of hypothetical section 922(g)(10), defendants would only need to know that they had received a sentence longer than one year.

To a large extent, Congress followed a similar approach here by providing in section 921 a list of definitions of terms "as used in" the U.S. Code chapter in which section 922 appears. That list includes the definition of "misdemeanor crime of domestic violence." That definition, as noted above, reads as follows:

- 19 -

> [T]he term "misdemeanor crime of domestic violence" means an offense that --
>
>> (i) is a misdemeanor under Federal, State, or Tribal law; and
>>
>> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A).

Of course, in our hypothetical we posited that the definition of the shorthand description appeared right in the same hypothetical subsection of 922(g), whereas here the definition appears in a different section of the Code. But we are not engaged in an inquiry that presumes the defendant looked at the statute. We are asking instead whether Minor knew that he belonged to the category of persons convicted of a misdemeanor crime of domestic violence. And where Congress provided a definition of that term "as used in" the relevant chapter of the U.S. Code, we think that if Minor's knowledge about his prior conviction included everything necessary to satisfy that same definition, then -- for purposes of a conviction under sections 924(a)(2) and 922(g)(9) -

- he knew that he was in the category of persons convicted of a crime so defined.[6]

**2.**

That leaves the following question: Did the instruction here convey that the jury must find that Minor's knowledge about his prior offense included everything necessary to satisfy the definition of "misdemeanor crime of domestic violence"? Framing such an instruction poses a special challenge where, as here, the definition is technical and complex, yet a conviction requires knowledge by a layperson of all its necessary parts, which we discuss below. On the one hand, a trial court might find it helpful to further describe the statutory definition so that the jury can better understand it. See United States v. Woodward, 149 F.3d 46, 69 (1st Cir. 1998) ("Clear, accurate, easily understood jury instructions are 'vitally important in assuring that jurors grasp subtle or highly nuanced legal concepts.'" (quoting United States v. DeStefano, 59 F.3d 1, 4 (1st Cir. 1995))). On the other hand, one must proceed with caution in crafting a bespoke rewrite

---

[6] Proof beyond a reasonable doubt of this type of knowledge is sufficient to prove that a defendant knew that he belonged to the relevant category, but it is not always necessary. If, for example, the government proved that a defendant knew that a previous conviction was classified under federal law as a misdemeanor crime of domestic violence -- perhaps in part because he had been informed of this classification during previous judicial proceedings -- it would not matter if he did not understand exactly why his conviction was so classified.

of the statutory definition. The risk is that the effort to clarify introduces a misdescription that allows the jury to convict without finding that the defendant actually knew he belonged to the relevant section 922(g) category.

In this instance, Minor asked the trial court to tell the jury verbatim how the statute defined "misdemeanor crime of domestic violence." The trial court opted instead to paraphrase what Congress required Minor to know in order to be convicted. In the jury instruction, the court listed what the government had argued at the time were the relevant features of Minor's underlying conviction that made it a misdemeanor crime of domestic violence. The court explained that the instruction adopted certain language from United States v. Castleman, 572 U.S. 157 (2014). Castleman held that the term "physical force" as used in the definition of "misdemeanor crime of domestic violence" includes "offensive touching," and thus crimes that have as an element mere "offensive touching" satisfy the "physical force" requirement of that definition. Id. at 162-63. The court also noted that the instruction incorporated language from Minor's underlying statute of conviction, which prohibited "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to another person." Me. Rev. Stat. Ann. tit. 17-a, § 207(1)(A). But the result was a material misdescription. To show why this is

so, we set forth the statutory definition followed by the relevant part of the court's instruction, with the key phrases underlined.

Statutory Text

[T]he term "misdemeanor crime of domestic violence" means an offense that --

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) <u>has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon</u>, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

Jury Instruction As Given

Third, that Willie Richard Minor knew that he had been convicted of that crime, that he knew the conviction subjected him to incarceration of up to 364 days, <u>that he knew the conviction was for causing bodily injury or offensive physical contact to another person</u>, and that he knew the victim of the crime was his spouse at the time.

As the government concedes in its supplemental brief, the jury needed to find that Minor knew that his prior conviction "ha[d], <u>as an element</u>, the <u>use</u> or attempted use of physical force, or the threatened use of a deadly weapon" (quoting section 921(a)(33)(A)) (emphases added). Comparing this

requirement to the portion of the instruction block-quoted above reveals two key omissions, each of which was error.[7]

First, the definition given to the jury omitted any need to find that Minor knew that the Maine offense "ha[d], as an element, the use or attempted use of physical force." Nor did the instruction otherwise convey the concept of an "element." The district court could have, for example, told jurors they must find that Minor knew that, in order for him to have been convicted of the Maine offense at a trial, the government would have had to prove beyond a reasonable doubt that he "use[d] or attempted [to] use . . . physical force." Instead, the instruction simply required that Minor knew what his conviction was "for."

Second, the jury instruction eliminated the "use" requirement in favor of relying on a passive requirement of an offensive touching, which a defendant might "cause." While the Supreme Court has held that intentionally, knowingly, or recklessly causing bodily injury or offensive physical contact necessarily involves the "use" of force, the district court failed to include any of those key adverbs. See Castleman, 572 U.S. at 170 ("[T]he knowing or intentional application of force is a 'use'

_____

[7] We do not address the portion of the instruction regarding Minor's requisite knowledge that the crime was a misdemeanor, as Minor raises no specific challenge to it. On this point, the instruction did not use the word "misdemeanor," instead providing that the jury must find "that he knew the conviction subjected him to incarceration of up to 364 days."

- 24 -

of force."); <u>Voisine</u>, 579 U.S. at 698-99 (holding that the "'use . . . of physical force' . . . encompasses acts of force undertaken recklessly").

The government nevertheless defends the instruction by claiming that the Supreme Court in <u>Castleman</u> defined "use of force" under section 921(a)(33)(A) without using the words "use" or "force," referring to it in the same way the jury instruction did here -- "causing bodily injury or offensive physical contact to another person." This is simply wrong. In the pages cited by the government, the Supreme Court was describing the requisite force, not the requirement that it be used. <u>Castleman</u>, 572 U.S. at 162-63. Indeed, after having defined force to include mere "offensive touching," the Court in <u>Castleman</u> proceeded to discuss the requirement that the defendant "use" that force, noting that "the word 'use' conveys the idea that the thing used (here, 'physical force') has been made the user's instrument," and that "the 'use' of force must entail 'a higher degree of intent than negligent or merely accidental conduct.'" <u>Id.</u> at 170-71 (quoting <u>Leocal</u> v. <u>Ashcroft</u>, 543 U.S. 1, 9 (2004)). Notably, the Court then found that the underlying conviction in <u>Castleman</u> -- "intentionally or knowingly caus[ing] bodily injury to the mother of his child" -- qualified as a misdemeanor crime of domestic violence in part because the indictment "ma[de] clear that the use of physical force was an element of his conviction." <u>Id.</u> at 169, 171 (quotation

marks omitted). That is to say, the conviction sufficed because it made clear exactly that which was omitted from the instruction in this case.

The government further argues that "the district court's knowledge instruction appropriately 'convert[ed] legal jargon into a digestible definition for the jurors' without omitting any necessary aspects" (quoting Minor, 31 F.4th at 27 n.11 (Lynch, J., dissenting)). But the instruction here did not merely clarify "legal jargon" with synonyms or definitions; it rather altered what the government was required to prove.

**3.**

As noted above, Minor preserved his objection to this misdescription of the required elements in the instruction. The government initially proposed instructions requiring the jury to find that Minor knew "the crime involved the use or attempted use of physical force." Once the government changed its position and the district court settled on instructions requiring only a finding that Minor knew "the conviction was for causing bodily injury or offensive physical contact to another person," Minor's counsel specifically requested that the phrase "use or attempted use of physical force" be incorporated into the instruction in order to "bring[] in . . . the language of the federal statute." Minor additionally requested that the court simply read out the statutory definition of "misdemeanor crime of domestic violence," including

- 26 -

the crucial provision here that the predicate offense must have "as an element, the use or attempted use of physical force."

Minor repeated these arguments in his opening brief in this appeal: "[T]he [trial] judge found that he did not need to instruct the jury that the Government prove that the defendant knew that the offense for which he had been convicted 'has [as] an element, the use or attempted use of physical force[,]' even though that is required in the definition of 'misdemeanor crime of domestic violence.'" In response, the government did not challenge this argument as unpreserved. To the contrary, in its own responsive opening brief, the government expressly agreed with Minor that we should review the instructional challenges as "preserved claims of instructional error."

Under that standard of review, we could overlook the error if the government could show that it was harmless. United States v. McLellan, 959 F.3d 442, 466 (1st Cir. 2020). An instructional error regarding an element of the offense "is harmless if 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. (quoting United States v. Wright, 937 F.3d 8, 30 (1st Cir. 2019)). The government, though, does not even attempt to argue that an instructional error here was harmless.

**4.**

The government asks that, if we reject the instruction given at trial, we provide clear guidance for the district court on remand.  This is a sensible request.  Congress's attempt to tailor prohibitions on gun possession by providing what laypersons might regard as unclear categories while simultaneously requiring that violations of the prohibitions must be knowing creates great opportunities for confusion, as shown by the history of this case. Even the overly simplified instruction fashioned by the district court appeared to confuse the jurors.[8]

We therefore provide the following guidance for the district court and parties on remand.

First, as the district court correctly held, the government need not prove that Minor knew that his knowing possession of a firearm was a crime.  It need only prove that he knew he possessed a firearm and, at the time he possessed it, he

---

[8] During deliberations, the jury submitted a note to the district judge asking, "why does it say that he was convicted of a misdemeanor crime of domestic violence?  Is this a mistake?  Does this matter?"  The judge subsequently explained, "it does not say that he was convicted of a misdemeanor crime of domestic violence. It's describing the charge against him in this federal court." When asked if the jury had remaining questions, the foreperson responded, "when we read the top part and it's in large letters and it says possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence, . . . we were like we thought he was convicted of simple assault, which is written as assault, and we weren't sure, is domestic violence and assault and simple assault all the same and do they carry the same weight."

knew that he belonged to the category of persons convicted of a misdemeanor crime of domestic violence.

Second, to prove that he knew that he belonged to that category, the government need not prove that he knew that his prior offense bore under federal law the label "misdemeanor crime of domestic violence." Instead, borrowing from Congress's definition of "misdemeanor crime of domestic violence," the court can instruct the jury that the government must prove that Minor knew, at the time he possessed a gun, that: (i) he had been previously convicted of an offense that "is a misdemeanor under Federal, State, or Tribal law"; (ii) in order for him to have been convicted of the prior offense at a trial, the government would have had to prove beyond a reasonable doubt that he "use[d] or attempted [to] use . . . physical force"; and (iii) the victim of that offense was, at the time of the offense, his "current or former spouse." 18 U.S.C. § 921(a)(33)(A).[9]

Third -- in accordance with Castleman and Voisine -- the district court should, if asked by either party, explain that the "use . . . of physical force" means intentionally, knowingly, or recklessly causing bodily injury or offensive physical contact to another person. See Castleman, 572 U.S. at 170; Voisine, 579 U.S. at 698-99. This language would align with the definition of

---

[9] Cf. supra note 2.

- 29 -

Minor's predicate offense -- "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to another person." Me. Rev. Stat. Ann. tit. 17-a, § 207(1)(A).[10] Such an explanation would also be consistent with the Eleventh Circuit's decision in United States v. Johnson, 981 F.3d 1171 (11th Cir. 2020), which held that, to be convicted under sections 924(a)(2) and 922(g)(9), "the evidence must establish that [the defendant] knew: . . . to be convicted of [the predicate] misdemeanor, he must have knowingly or recklessly engaged in at least 'the slightest offensive touching.'"  Id. at 1183.

## B.

Our conclusion that the jury instruction missed the mark in a manner that the government does not claim was harmless beyond a reasonable doubt requires that we vacate the verdict.  Minor, though, asks that we go one step further and order the entry of an acquittal because, he says, the evidence was insufficient to prove that he had the knowledge we have just explained he needed to have to establish his guilt.  The government concedes that this challenge to the conviction is preserved, but contends that its

---

[10]  As discussed above, the district court here described that the jury instruction incorporated "the definition of [Maine] Section 207 assault"; but the court omitted from the definition the crucial phrase under Voisine -- "intentionally, knowingly or recklessly."

own proof was at least minimally sufficient.  For the following reasons, we agree with the government.

We review Minor's challenge to the sufficiency of the evidence de novo, evaluating the evidence "in the light most favorable to the verdict" to decide "whether 'that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.'"  United States v. Torres Monje, 989 F.3d 25, 27 (1st Cir. 2021) (quoting United States v. Santos-Rivera, 726 F.3d 17, 23 (1st Cir. 2013)).  In so doing, "we do not view each piece of evidence separately, re-weigh the evidence, or second-guess the jury's credibility calls."  United States v. Acevedo-Hernández, 898 F.3d 150, 161 (1st Cir. 2018).

Here, Minor stipulated to or conceded most elements of the offense, including that he knowingly possessed the gun, that it had traveled in interstate commerce, that he had been convicted of a misdemeanor assault offense, and that the named victim in his assault complaint was his spouse at the time.  On appeal, Minor disputes only the government's proof that he knew of his prohibited status as a domestic violence misdemeanant.

On that element, the government introduced some of the Maine state-court records, which included the initially charged offense of "domestic violence assault" against Betty Minor. According to the transcript of Minor's arraignment on that initial

charge, which the government also introduced, Minor testified he understood that he had been charged with "domestic violence assault," that it was for "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to Betty . . . Minor," and that the assault was alleged to have been "committed against a family or household member." The judicial advice-of-rights video played at that arraignment further informed Minor that he could lose the right to possess firearms for certain offenses involving force against a spouse. Thereafter, the parties agreed to amend the state-court complaint by reducing the charge to simple assault, striking the language alleging that "[t]his conduct was committed against a family or household member as defined by [Maine law]." The amendment did not disturb the allegation that Minor "intentionally, knowingly or recklessly cause[d] bodily injury or offensive physical contact to Betty Minor."

It is true that a layperson in Minor's position might not necessarily understand that every allegation in a criminal complaint must be proved to sustain a conviction, especially given the possibility that a complaint may contain surplusage. But under our standard for reviewing challenges to the sufficiency of the evidence, "we evaluate the sum of all the evidence and inferences drawn therefrom in the light most favorable to the government . . . and 'determine whether that sum is enough for any reasonable jury

to find all the elements of the crime proven beyond a reasonable doubt, even if the individual pieces of evidence are not enough when viewed in isolation.'" Acevedo-Hernández, 898 F.3d at 161 (quoting United States v. Santos-Soto, 799 F.3d 49, 57 (1st Cir. 2015)). Especially where Minor negotiated the excision of other language from the complaint, jurors could infer that Minor knew that the government would have had to prove the unchanged allegation that he "intentionally, knowingly or recklessly cause[d] bodily injury or offensive physical contact to Betty Minor." Accordingly, a reasonable jury could find that Minor had the knowledge required for a conviction under sections 924(a)(2) and 922(g)(9), and thus we reject Minor's sufficiency challenge.

## III.

Finally, Minor argues that the district court erroneously excluded two categories of evidence: first, testimony by Minor regarding "what he believed about whether he was allowed to possess a gun after the simple assault conviction"; and second, testimony from his state-court counsel regarding ADA Worden's purported representation that Minor would still be able to possess firearms if he pleaded to the reduced simple assault charge.

Without knowing the precise context in which such testimony might be proffered in a new trial, we eschew opining preemptively on its admissibility beyond observing that -- as we have explained above -- a conviction under section 924(a)(2) for

knowingly violating section 922(g)(9) does not require proof that the defendant knew that he could not possess a gun.  As to the alleged lack of that knowledge, ignorance of the law is no defense.

**IV.**

For the foregoing reasons, we <u>vacate</u> Minor's conviction under sections 924(a)(2) and 922(g)(9) and <u>remand</u> for further proceedings in accordance with this opinion.