*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JOSEPH KVASNICKA,

        Defendant-Appellant.

FOR PUBLICATION
July 21, 2025
9:27 AM

No. 371542
Wayne Circuit Court
LC No. 24-001354-01-FH

## ON REMAND

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

M. J. KELLY, J.

This case involving the constitutionality of MCL 750.543m, a statute that criminalizes making a terrorist threat or making a false report of terrorism, returns to us on remand from our Supreme Court. *People v Kvasnicka*, ___ Mich ___; 18 NW3d 308 (2025) (*Kvasnicka II*). In our prior opinion, we concluded that MCL 750.543m was facially unconstitutional because, contrary to the United States Supreme Court's decision in *Counterman v Colorado*, 600 US 66; 143 S Ct 2106; 216 L Ed 2d 775 (2023), the statute's plain language does not require the prosecution to prove that the defendant acted recklessly, i.e., that he or she "consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence." *People v Kvasnicka*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371542); slip op at 5, vacated and remanded 18 NW3d 308 (2025) (*Kvasnika I*). In its order vacating *Kvasnicka I*, our Supreme Court did not express an opinion on the constitutionality of MCL 750.543m. *Kvasnicka II*, 18 NW3d at 308. Rather, the Court directed us to

> address the proper interpretation of MCL 750.543m in light of: (1) MCL 750.543z, which provides that "a prosecuting agency shall not prosecute any person or seize any property for conduct presumptively protected by the first amendment to the constitution of the United States in a manner that violates any constitutional provision"; and (2) the constitutional-doubt canon, see *Sole v Mich Econ Dev Corp*, 509 Mich 406, 419-420; 983 NW2d 733 (2022). The Court of Appeals shall also address: (3) whether it is appropriate to adopt a limiting construction of MCL

-1-

750.543m to remedy any remaining constitutional deficiency, see *People v Burkman*, 513 Mich 300, 340; 15 NW3d 216 (2024); see also *Osborne v Ohio*, 495 US 103, 115; 110 S Ct 1691; 109 L Ed 2d 98 (1990); (4) if so, what that limiting construction should be; and (5) whether the Wayne Circuit Court abused its discretion by dismissing the case without prejudice on February 24, 2025, where doing so necessarily implicated "aspects of the case involved in the interlocutory appeal" while an application for leave to appeal remained pending with [the Michigan Supreme Court]." *People v Scott*, 513 Mich 180, 200; 15 NW3d 159 (2024); see MCR 7.215(F)(1)(a); MCR 7.305(C)(6)(a). [*Id*.]

Having considered these directives, we now conclude that MCL 750.543m(1)(a) is not facially unconstitutional. Accordingly, we affirm the trial court's order denying defendant's motion to dismiss the charges against him and remand for further proceedings consistent with this opinion.

## I. DISMISSAL BY THE TRIAL COURT

We first address whether the trial court abused its discretion by dismissing this case without prejudice while an application for leave was pending in our Supreme Court. We conclude that it did. MCR 7.215(F)(1)(a) provides that, unless otherwise ordered by this Court or our Supreme Court, "the Court of Appeals judgment is effective after the expiration of the time for filing an application for leave to appeal in the Supreme Court, or, if such an application is filed, after the disposition of the case by the Supreme Court[.]" Additionally, MCR 7.305(C), provides in relevant part:

> (6) If a party appeals a decision that remands for further proceedings as provided in subrule (C)(5)(a), the following provisions apply:

> (a) If the Court of Appeals decision is a judgment under MCR 7.215(E)(1), an application for leave to appeal stays proceedings on remand unless the Court of Appeals or the Supreme Court orders otherwise.

In our prior opinion, issued on February 13, 2025, we reversed the trial court's order denying Kvasnicka's motion to dismiss and ordered the court to enter an order dismissing the charges. *Kvasnicka I*, ___ Mich App at ___; slip op at 5. The prosecution had 56 days to file an application for leave to appeal in the Supreme Court under MCR 7.305(C)(2), and it filed its application on February 20, 2025. At that point, the trial court remained divested of subject-matter jurisdiction. See *People v Winburn*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369323); slip op at 2-3 (holding that a trial court is divested of subject-matter jurisdiction upon the filing of a claim of appeal and, upon the filing of an application for leave to appeal to our Supreme Court, "jurisdiction remains with the appellate courts (and correspondingly, the circuit court remains divested of jurisdiction) until the Supreme Court's 'disposition of defendant's application for leave to appeal the Court of Appeals' judgment.' " (quoting *People v Washington*, 508 Mich 107, 127; 972 NW2d 767 (2021)). Contrary to the court rules, and in the absence of subject-matter jurisdiction, the trial court dismissed the case without prejudice on February 28, 2025, which was 15 days after this Court issued the opinion, and 8 days after the prosecution filed its application for leave to appeal. In doing so, the court abused its discretion.

## II. CONSTITUTIONALITY OF MCL 750.543m

### A. STANDARD OF REVIEW

In its remand order, our Supreme Court has directed us to consider the proper interpretation of MCL 750.543m in light of MCL 750.543z and the constitutional-doubt canon of statutory interpretation. We review de novo questions related to the constitutionality of a statute. *People v McKinley*, 496 Mich 410, 415; 852 NW2d 770 (2014). We also review de novo the proper application and interpretation of a statute. *Id*. at 414-415.

### B. ANALYSIS

### 1. CONSTITUTIONAL PRINCIPLES

We first consider the underlying constitutional principles applicable in this case. Although the states and the federal government are prohibited from making laws that abridge the freedom of speech, US Const Am I and Const 1963, art 1, § 5, it is well-established that "[t]rue threats of violence are outside the bounds of First Amendment protection and [are] punishable as crimes." *Counterman*, 600 US at 69. " 'True threats' encompass those statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v Black*, 538 US 343, 359; 123 S Ct 1536; 155 L Ed 2d 535 (2003). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id*. at 359-360 (quotation marks, alterations, and citation omitted). "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Counterman*, 600 US at 74, citing *Watts v United States*, 394 US 705, 708; 89 S Ct 1399; 22 L Ed 2d 664 (1969). "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat[.]" *Counterman*, 600 US at 74, citing *Elonis v United States*, 575 US 723, 733; 135 S Ct 2001; 192 L Ed 2d 1 (2015). "The existence of a threat depends not on the mental state of the author but on what the statement conveys to the person on the other end." *Id*. (quotation marks and citation omitted). In *Counterman*, recognizing that a statement can qualify as a true threat "solely on its objective content," the *Counterman* Court considered "whether the First Amendment nonetheless demands that the State in a true-threats case prove that the defendant was aware in some way of the threatening nature of his communications." *Counterman*, 600 US at 72.

The defendant in *Counterman* sent a woman, CW, hundreds of Facebook messages between 2014 and 2016. *Counterman*, 600 US at 70. CW did not know the defendant and never responded to his messages. *Id*. Some of the defendant's messages were facially inoffensive, although they suggested that he and CW had a personal relationship. *Id*. Other messages indicated that the defendant had observed or followed CW without her knowledge, and still others were even more perplexing or menacing. *Id*. The prosecutor charged the defendant with violating Colorado's stalking statute, Colo Rev Stat 18-3-602(1)(c) (2020), which stated in pertinent part:

(1) A person commits stalking if directly, or indirectly through another person, the person knowingly:

* * *

(c) Repeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship to suffer serious emotional distress. For purposes of this paragraph (c), a victim need not show that he or she received professional treatment or counseling to show that he or she suffered serious emotional distress.

The defendant moved to dismiss the charge on First Amendment grounds, arguing that his messages were not "true threats." *Counterman*, 600 US at 71. The trial court denied the motion because an objective, reasonable person would have viewed the messages as threatening. *Id*. The state appellate court affirmed the order, ruling that the prosecution did not need to prove that the defendant subjectively intended to threaten CW and that his messages were true threats under the state's objective standard. *Id*. at 71-72. The Colorado Supreme Court denied review of the defendant's application for leave to appeal. *Id*. at 72.

Thereafter, the United States Supreme Court determined that, in a true-threats case, a subjective mental state was constitutionally required in order to avoid chilling constitutionally protected speech. *Id*. at 75. In doing so, the Court reasoned that a recklessness *mens rea* was the subjective standard required by the First Amendment. *Id*. at 79. It explained:

> A person acts recklessly, in the most common formulation, when he "consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another." *Voisine v United States*, 579 US 686, 691; 136 S Ct 2272; 195 L Ed 2d 736 (2016) (internal quotation marks omitted). That standard involves insufficient concern with risk, rather than awareness of impending harm. See *Borden v United States*, 593 US ___, ___; 141 S Ct 1817, 1823–1824; 210 L Ed 2d 63 (2021) (plurality opinion). But still, recklessness is morally culpable conduct, involving a "deliberate decision to endanger another." *Voisine*, 579 US at 694. In the threats context, it means that a speaker is aware "that others could regard his statements as" threatening violence and "delivers them anyway." *Elonis*, 575 US at 746 (Alito, J., concurring in part and dissenting in part). [*Id*.]

Accordingly, the Court held that, in a true-threats case, "[t]he State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another." *Id*. at 69. Because Colorado applied an objective standard in the defendant's prosecution, the *Counterman* Court ruled that the defendant's conviction violated his First

Amendment rights. *Id*. at 82. Accordingly, the Court vacated the judgment of the Colorado Court of Appeals and remanded the case for further proceedings. *Id*. at 83.

## 2. STATUTORY INTERPRETATION

Kvasnika is charged with making a threat of terrorism under MCL 750.543m(1)(a).[1] In prior caselaw addressing the constitutionality of MCL 750.543m, this Court has determined that MCL 750.543m only applies to true threats. *People v Osantowski*, 274 Mich App 593, 603; 736 NW2d 289 (2007), rev'd in part on other grounds 481 Mich 103 (2008); *People v Byczek*, 337 Mich App 173, 186; 976 NW2d 7 (2021); and *People v Gerhard*, 337 Mich App 680, 687-688; 976 NW2d 907 (2021). Specifically, the *Byczek* Court explained:

> The prosecution is not required to prove that the defendant had the intent or the capability to actually carry out the threatened act of terrorism, MCL 750.543m(2), but the prosecution must prove the defendant's general intent to communicate a true threat; that is, the "communication of a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," made with "an intent to 'intimidate or coerce.' " [*Byczek*, 337 Mich App at 185-186, quoting *Osantowski*, 274 Mich App at 603].

*Osantowski*, *Byczek*, and *Gerhard* were decided prior to the United States Supreme Court's decision in *Counterman*. Moreover, given that a statement can qualify as a true threat "based solely on its objective content," *Counterman*, 600 US at 72, the mere fact that the prior cases determined that MCL 750.543m only applies to true threats does not answer the question of whether the "general intent to communicate a true threat" is to be judged by an objective or a subjective standard.

Having concluded that prior caselaw does not answer the question at issue, we turn to the relevant statutory language. If a statute criminalizes pure speech, then it "must be interpreted with the commands of the First Amendment clearly in mind." *Watts*, 394 US at 707. "The first step when interpreting a statute is to examine its plain language, which provides the most reliable evidence of [legislative] intent." *McKinley*, 496 Mich at 415. However, under the constitutional-doubt canon, "[w]hen the validity of an act . . . is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Sole*, 509 Mich at 419 (quotation marks and citations omitted; alteration in original). Under this canon, "courts reasonably presume that the Legislature did not intend to enact a statute that raises serious constitutional doubts." *Id*. at 419-420 (quotations marks and citation omitted). To avoid such an outcome we must "adopt any other construction of the statute *that is fairly possible*." *Id*. at 421 (quotation marks and citations omitted; emphasis added).

---

[1] In addition to the charge of making a threat of terrorism, Kvasnika was also charged with using a computer to commit a crime, MCL 752.796. Both charges arise from a message that Kvasnika sent to a young girl via social media stating that she was "not gonna be laughing once I come to your school and shoot it up or blow it up like [C]olumbine."

Additionally, as it relates to the application of the Michigan Anti-Terrorism Act, MCL 750.543a *et seq.*, we also consider MCL 750.543z, which provides that "[n]otwithstanding any provision in this chapter, a prosecuting agency shall not prosecute any person or seize any property for conduct presumptively protected by the first amendment to the constitution of the United States in a manner that violates any constitutional provision." This does not mean that all prosecutions under the Michigan Anti-Terrorism Act automatically survive constitutional scrutiny. To be sure, the prefatory phrase "notwithstanding any provision in this chapter," acknowledges that, under some circumstances, application of the statutory provisions in the Michigan Anti-Terrorism Act— including MCL 750.543m—may result in an unconstitutional infringement upon a person's First Amendment rights. The second part of the sentence, however, clarifies that the Legislature does not, in fact, intend any such unconstitutional application of the statute to be used by the prosecution, notwithstanding the existence of statutory language to the contrary.

With these principles in mind, we turn to the language in MCL 750.543m. MCL 750.543m(1)(a) provides that "[a] person is guilty of making a terrorist threat" if he or she "[t]hreatens to commit an act of terrorism and communicates the threat to any other person." MCL 750.543(1)(a). An "act of terrorism" is defined as

> a willful and deliberate act that is all of the following:
>
> (*i*) An act that would be a violent felony under the laws of this state, whether or not committed in this state.
>
> (*ii*) An act that the person knows or has reason to know is dangerous to human life.
>
> (*iii*) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion. [MCL 750.543b(a).]

Unlike a charge of making a false report of terrorism, which requires that the defendant "*[k]nowingly* makes a false report of an act of terrorism and communicates the false report to another person, *knowing* it is false," MCL 750.543m(1)(b) (emphasis added), there is no scienter requirement expressly stated in the plain language of MCL 750.543m(1)(a). Rather, based upon the plain statutory language, a defendant is guilty of making a terrorist threat if he or she threatens to commit an act of terrorism and communicates that threat to another.

However, a statute is not unconstitutional merely because it is silent regarding the element of intent. *Elonis v United States*, 575 US 723, 734; 135 S Ct 2001; 192 L Ed 2d 1 (2015). In *Elonis*, the defendant was charged with several counts under 18 USC 875(c) for transmitting interstate commerce threats to injure another person. The defendant moved to dismiss the charges because, although the prosecution showed that he intentionally made a communication, it did not show that he intentionally made a threat. *Id*. at 731. The trial court denied the motion, and, at trial, the defendant asked for a jury instruction that the prosecutor had to prove that he intended to communicate a true threat, but the trial court denied his request. *Id*. Instead, the trial court told the jury that a statement is a true threat if a person makes a statement under circumstances in which a reasonable person would foresee that the recipient would interpret the statement as a serious

statement of an intention to inflict bodily injury. *Id*. The prosecution argued to the jury that it did not matter what the defendant thought or whether he intended the posts to be threats. *Id*. at 732. After he was convicted of four counts, the defendant raised his intent arguments in the appellate court, but it ruled that the intent required in the statute was "only the intent to communicate words that the defendant understands, and that a reasonable person would view as a threat." *Id*.

The *Elonis* Court recognized that 18 USC 875(c) did not include an intent element, but held that the failure to state a level of intent in the words of the statute did not mean that none existed. *Id*. at 734. The *Elonis* Court reasoned:

> We have repeatedly held that "mere omission from a criminal enactment of any mention of criminal intent" should not be read "as dispensing with it." *Morissette v United States*, 342 US 246, 250[; 72 S Ct 240; 96 L Ed 288] (1952). This rule of construction reflects the basic principle that "wrongdoing must be conscious to be criminal." *Id*., at 252. As Justice Jackson explained, this principle is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Id*., at 250. The "central thought" is that a defendant must be "blameworthy in mind" before he can be found guilty, a concept courts have expressed over time through various terms such as *mens rea*, scienter, malice aforethought, guilty knowledge, and the like. *Id*., at 252; 1 W LaFave, Substantive Criminal Law § 5.1, pp 332–333 (2d ed. 2003). Although there are exceptions, the "general rule" is that a guilty mind is "a necessary element in the indictment and proof of every crime." *United States v Balint*, 258 US 250, 251[; 42 S Ct 301; 66 L Ed 604] (1922). We therefore generally "interpret[] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *United States* v *X-Citement Video, Inc*, 513 US 64, 70[; 115 S Ct 464; 130 L Ed 2d 372] (1994). [*Elonis*, 575 US at 734.]

The *Elonis* Court then considered the defendant's conduct of transmitting a threat of violence under 18 USC 875(c) and concluded that it was not enough to show that his posts would be understood to be threatening by a reasonable person. *Elonis*, 575 US at 737-738. Although a reasonable-person standard may be sufficient to establish civil liability in negligence cases, the Court ruled that to convict a person of a criminal offense, the person had to have some awareness of wrongdoing. *Id*. at 738. Because the defendant was convicted under an objective standard regarding his state of mind, the *Elonis* Court reversed his conviction. *Id*. at 740. The *Elonis* Court, however, declined to determine whether it was enough to show that the defendant acted recklessly or whether a prosecutor must prove that the defendant had a higher level of intent to meet the *mens rea* requirement in the statute, *id*. at 740-742. That question was later answered in *Counterman*, which, as noted above, held that it was sufficient to show that the defendant acted recklessly. *Counterman*, 600 US at 72-73.

Accordingly, under *Elonis*, the lack of an express *mens rea* in MCL 750.543m(1)(a) is not dispositive as to the statute's constitutionality because the statute should be broadly interpreted to

include a *mens rea* requirement even though the statute is otherwise silent.[2]  In turn, under the constitutional-doubt canon of statutory interpretation, it is "fairly possible" to construe MCL 750.543m(1)(a) as constitutional by interpreting MCL 750.543m(1)(a) to include a *mens rea* requirement that does not fall foul of the decision in *Counterman*.  See *Sole*, 509 Mich at 421.  We, therefore, construe MCL 750.543m(1)(a) as requiring that the prosecution prove (1) that the defendant *recklessly* threatened (2) to commit an act of terrorism and (3) that the threat was communicated to another person.  The term "recklessly" means that the defendant "consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence."  See *Counterman*, 600 US at 69.[3]

### 3. INSTRUCTIONS TO THE TRIAL COURT ON REMAND

Under MCR 2.512(D)(2), the use of the model jury instructions is generally required unless the trial court determines that the instruction does not accurately reflect the state of the law.  The model jury instructions for making a terrorist threat are stated in M Crim JI 38.4, which provides:

> (1) The defendant is charged with the crime of making a threat to commit an act of terrorism.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

> (2) First, that the defendant communicated with [*identify recipient(s) of communication*] by speech, writing, gestures, or conduct.

---

[2] This is contrary to ordinary principles of statutory interpretation, which provide that "[t]he touchstone of legislative intent is the statute's language."  *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).  Ordinarily, "[i]f the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written."  *Id*. (quotation marks and citation omitted).  Additionally, given that the Legislature added a "knowingly" scienter requirement to the crime of making a false report of an act of terrorism charge, but did not add a scienter requirement to the crime of threatening to commit an act of terrorism, we would ordinarily conclude that the omission of an intent requirement for the latter crime was intentional and so we would not add an intent requirement that was omitted by the Legislature.  See *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 565; 741 NW2d 549 (2007) ("The omission of a provision in one part of a statute that is included in another part of the statute should be construed as intentional, and a provision not included in one part of a statute should not be included by a court.").  It is only with the utmost hesitation and reluctance that we read into MCL 750.543m(1)(a) a *mens rea* requirement that the Legislature did not deem necessary to expressly state when enacting MCL 750.543m(1)(a).  The more proper fix would be for the Legislature to amend MCL 750.543m(1)(a) to conform to the law, as set forth in *Counterman*, and we encourage it to do so.

[3] Because MCL 750.543m(1)(a) can be construed as constitutional under *Elonis* and the constitutional-doubt canon of statutory interpretation, we need not consider whether a limiting construction would be appropriate under *Burkman*, 513 Mich 300, and *Osborne*, 495 US 103, to remedy any remaining constitutional deficiencies.

(3) Second, that during the course of the communication, the defendant threatened to commit an act of terrorism. A threat does not have to be stated in any particular terms but must express a warning of danger or harm. Further, it must have been a true threat, and not have been something like idle talk, or a statement made in jest, or a political comment. It must have been made under circumstances where a reasonable person would think that others may take the threat seriously as expressing an intent to inflict harm or damage.

To prove that the defendant threatened to commit an act of terrorism, the prosecutor must prove:

(A) that the defendant communicated that [he / she] would commit the felony crime of [*state felony*];

(B) that the defendant knew or had reason to know that committing the felony would be dangerous to human life, meaning that committing the felony would cause a substantial likelihood of death or serious injury, or the felony involved a kidnapping;

(C) that, by committing the felony, the defendant would intend to intimidate, frighten, or coerce a civilian population, or influence or affect the conduct of government or a unit of government through intimidation or coercion.

It does not matter whether the defendant actually could commit the felony or actually intended to commit the felony, but only whether the defendant threatened to commit the felony as an act of terrorism.

Because M Crim JI 38.4(3) only requires that the prosecution must prove that an objectively reasonable person would understand that his message was a true threat, not that the defendant must be subjectively aware that his message was a true threat, we conclude that it is contrary to law. Accordingly, the trial court should not use the model jury instruction in this case as written. See MCR 2.512(D)(2)(b).[4] Rather, if it uses the model jury instruction it should adapt it so as to "give additional instructions on applicable law not covered by the model instructions." MCR 2.512(D)(4). Specifically, and in either event, consistent with our construction of MCL 750.543m(1)(a), the court should instruct the jury that the prosecution must prove that Kvasnika recklessly threatened to commit an act of terrorism, i.e., that he "consciously disregarded a substantial risk that his [or her] communications would be viewed as threatening violence." See *Counterman*, 600 US at 69.

---

[4] The rules for adopting, amending, or repealing a model jury instruction are set forth in MCR 2.512(D). Notably, the authority to do so falls upon committees appointed by our Supreme Court. MCR 2.512(D)(1). And the ultimate decisionmaker on the adoption, amendment, or repeal of such instructions is our Supreme Court. See MCR 1.201. Although we lack the authority to order that M Crim JI 38.4(3) be amended, we recommend that the Michigan Supreme Court consider such an amendment of the instructions.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Allie Greenleaf Maldonado